IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **JAMES WALCH and JANIS WALCH,** )<br>    **Plaintiffs,** )<br> )<br> **v.** )<br> )<br>**AARON MORGAN, Individually, in** )<br>**his Official Capacity, and as Agent of** )<br>**Montgomery County; SHERIFF RICK** )<br>**ROBBINS, Individually, in his** )<br>**Official Capacity, and as Agent of** )<br>**Montgomery County;** )<br>**MONTGOMERY COUNTY; SILVER** )<br>**LAKE GROUP, LTD., Individually** )<br>**and as Agent of CNB Bank; THOMAS** )<br>**DEVORE, Individually and as Agent** )<br>**of CNB BANK; CNB BANK &** )<br>**TRUST, N.A., a National Banking** )<br>**Corporation,** )<br>    **Defendants.** ) | **Case No. 19-cv-3191** |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendant CNB Bank & Trust, N.A.'s Motion for Summary

Judgment [Doc. 118].

## I.    INTRODUCTION

This is an action under 42 U.S.C. § 1983 wherein Plaintiffs James and Janis Walch

assert ten counts against three sets of Defendants: (1) attorney Thomas DeVore and his

law firm Silver Lake Group, Ltd.; (2) CNB Bank & Trust, N.A.; and (3) Montgomery

County, Sheriff Rick Robbins, and former Deputy Aaron Morgan. (Doc. 1). Plaintiffs

bring three claims against Defendant CNB Bank & Trust: (1) conspiracy to deprive

constitutional rights pursuant to 42 U.S.C. § 1983 (Count III); (2) *respondeat superior* for trespass due to DeVore's alleged conduct (Count IX); and (3) *respondeat superior* for conversion due to DeVore's alleged conduct (Count IX). (Doc. 118 at 1-2). CNB moves for summary judgment to the extent those claims are asserted against it.

## II.    FACTUAL BACKGROUND

This case arises, in part, out of events that occurred on May 3, 2019. (Doc. 118 at 3). Prior to May 3, 2019, CNB through its attorney DeVore and the Silver Lake Group, obtained a Replevin Order against nonparty Vincent J. Walch ("Vince") through a lawsuit between CNB and Vince pending in the Fourth Judicial Circuit of Illinois, Montgomery County, Case No. 2017-L-5 ("the Montgomery County Action"). (*Id.*) Vince is Plaintiffs' son. (*Id.*) Anna Walch, who established the Anna Walch Trust, was James's mother and Vince's grandmother. (*Id.*) CNB filed the Montgomery County Action to recover against Vince for breaches of various promissory notes he entered into with CNB. (*Id.*) Vince was in default to CNB in an amount exceeding $2 million. (*Id.*) In order to pursue the collateral items listed on the Replevin Order, CNB obtained relief from the stay order in Vince's pending bankruptcy action. (*Id.*) Before May 3, 2019, Langham Auctioneers was retained to assist with collecting and storing the items. (*Id.*) Langham Auctioneers addressed its May 20, 2019 invoice to DeVore, and it was billed to CNB. (*Id.* at 4).

The real property at issue is located at approximately 3207 Walch Trail in Raymond, Illinois. (*Id.*) Most of the real property is owned by the Anna Walch Trust. (*Id.*) CNB alleges neither James nor Janis Walch had an individual ownership interest in any of the Anna Walch Trust property. (*Id.* at 5). James Walch controlled the Hatchery

Building on that property on May 3, 2019, by serving as Anna Walch's power of attorney. (Doc. 118-5 at 80). James had operated his firearm business out of the Hatchery Building since his father died in the 1990s. (Doc. 118-3 at 43-44). Vince used this building and various buildings on the Anna Walch Trust property to store his farming equipment and for woodworking. (Doc. 118 at 5). Prior to May 3, 2019, Lynn Eyman, a CNB employee, visited the Anna Walch Trust property and Vince's building with Vince and a Langham Auctioneers owner. (Doc. 118-9 at 34-35). They created a list of items to be taken pursuant to the Replevin Order but did not go inside the Hatchery Building on that visit (*Id.*).

On the morning of May 3, 2019, Defendants DeVore, Morgan, and several employees from Langham Auctioneers arrived at the Anna Walch Trust property. (Doc. 118 at 5). Four CNB officers or employees arrived thereafter. (Doc. 128 at 6-7). Vince was either already at the subject property or arrived soon thereafter. (Doc. 118 at 5). The equipment subject to the Replevin Order was stored in the Hatchery Building, Vince's Building, and elsewhere on the Anna Walch Trust property grounds. (*Id.* at 6). Vince informed Morgan that if he needed to get into any buildings on the property, Vince would let him inside. (Docs. 118 at 6, 128 at 7). CNB corporate representative Chris Williams testified that "bank people picked up guns" in the Hatchery building but had no control over the guns and ammunition and did not remove those items. (Doc. 118-16 at 78-80). The "bank people" included CNB's President, Gary Graham, Lynn Eyman, Williams, and David Hurley. (*Id.*) The Langham employees proceeded to remove the equipment subject to the Replevin Order at the direction of DeVore. (Doc. 118 at 6).

Plaintiffs allege this was also done at the direction of CNB, as evidenced by the invoice showing CNB paid the Langham employees. (Doc. 128 at 7).

At some point on May 3, 2019, Vince left the Anna Walch Trust property to retrieve a key to the Hatchery Building. (Doc. 118 at 6). When Vince returned, he noticed a lock had been cut inside his building. (*Id.* at 7). Vince testified that, when he took issue with the lock being cut, DeVore stated, "I can do whatever the fuck I want." (*Id.*) No CNB employees were a part of or aware of that interaction. (*Id.*) Subsequently, Vince opened the Hatchery Building for DeVore and the Langham workers, and they proceeded to remove equipment subject to the Replevin Order. (Doc. 118-5 at 27-28). When the equipment subject to the Replevin Order was removed, Vince asked Deputy Morgan if he could leave the property, and Morgan responded that he could. (Doc. 118 at 7).

When DeVore purportedly cut a lock in Vince's building, he unveiled a "secret" room filled with firearms. (Doc. 118 at 7). At some point after discovering the firearms, DeVore called Roger Prillaman, the bankruptcy trustee for the Vince Walch and Alexis Walch bankruptcy estate. (*Id.*) During that phone call, DeVore asked Prillaman if they should take the firearms and ammunition found on the Anna Walch Trust property, indicating that some of the items might belong to James Walch. (*Id.* at 8). Prillaman indicated he was not inclined to do anything unless James agreed. (Docs. 118 at 8, 128 at 8). Thereafter, DeVore called Mark Weinheimer, James's attorney, to request permission to take the firearms and ammunition. (Doc. 118 at 8). Weinheimer authorized DeVore to execute the Replevin Order on Vince's property. (Doc. 118-14 at 18-20). The parties

dispute whether CNB employees were part of or privy to the phone calls. (Docs. 118 at 8, 128 at 9).

Subsequently, the Langham workers began taking firearms and ammunition from Vince's building and the Anna Walch Trust property. (Doc. 118 at 8). The parties dispute whether the appropriate consent was obtained from James Walch's attorney for DeVore to retrieve any firearms and ammunition. (*Id.* at 9, Doc. 128 at 10-11). They further dispute whether CNB employees believed that property belonging to Plaintiffs would be permanently taken. (Docs. 118 at 9, 128 at 1). While most of the firearms and ammunition that were taken were stored at Langham Auctioneers, Plaintiffs allege many items remain missing. (Docs. 118 at 9, 128 at 12). The firearms and ammunition were thereafter at the disposal of Prillaman. (Doc. 118 at 9). Plaintiffs ultimately recovered most of the firearms and ammunition from Langham but allege that some of the items were missing. (*Id.*, Doc. 128 at 12-13). Plaintiffs assert and CNB denies that the following items were taken on May 3, 2019, and remain missing: 1) six firearms; 2) certain ammunition rounds; 3) one "lower receiver" for an AR-15; and 4) 4,000 silver coins purchased by James Walch in 1987. (Doc. 118 at 10). Lynn Eyman testified "it was not possible" to document all items that were taken that day. (Doc. 119-12 at 130). Eyman stated the only picture of ammunition taken that day was a picture of a pallet as it was being removed. (*Id.* at 131-32).

Citing the testimony of Plaintiffs disclosed expert witness, Robert Jones, CNB alleges the condition of the firearms and ammunition before May 3, 2019, which Plaintiffs allege depleted while in Langham's custody, is unknown. (Doc. 118 at 10). Plaintiffs assert that, because Jones was hired long after May 3, 2019, he would not have knowledge

concerning the condition of the firearms and ammunition on May 3, 2019. However, James Walch does have knowledge regarding the condition of those items. (Doc. 128 at 13-14).

III.    DISCUSSION

CNB seeks summary judgment on Count III, claiming it did not conspire to deprive Plaintiffs of their constitutional rights and, further, that Plaintiffs' constitutional rights were not deprived. Specifically, CNB asserts: (1) there was no action under color of state law and there is no federal claim available for the alleged deprivation of Plaintiffs' personal property; and (2) Plaintiffs have failed to establish the essential elements of conspiracy. CNB also seeks summary judgment on Plaintiffs' trespass claim in Count IX on the basis that Plaintiffs' real property was not trespassed. CNB contends Plaintiffs did not have exclusive possession or any ownership of the Anna Walch Trust property, and the entry was consented to and, further, any intrusion onto the property did not subtract from its use.

CNB also asserts summary judgment is warranted on Plaintiffs' conversion claim in Count IX because Plaintiffs' personal property was not converted and CNB cannot be held liable for DeVore's alleged conduct. CNB further contends Plaintiffs cannot prove their alleged $138,841.75 in damages because there is no evidence of the personal property's condition before it was taken, and Plaintiffs' proffered expert cannot establish the amount of damages alleged. Finally, CNB asks the Court to strike Plaintiffs' punitive damages request because CNB did not direct, control, or ratify any alleged wrongful conduct. s

### A.  Legal Standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit, and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Biggs v. Chic. Bd. of Educ.*, 82 F.4th 554, 559 (7th Cir. 2023) (internal quotation marks and citation omitted). The Court views the evidence and construes all reasonable inferences in favor of the non-movant. *Driveline Systems, LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). "The court does not assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Driveline Systems*, 936 F.3d at 579 (internal quotation marks omitted).

### B.  1983 Conspiracy Claims

In Count III, Plaintiffs assert a claim under § 1983 against all Defendants[1] for Conspiracy to Deprive Constitutional Rights. A private citizen can act under color of law if there is evidence of a concerted effort between a state actor and the private individual. *See Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019). To establish liability for

---

[1] The conspiracy claim against Defendant Silver Lake Group has since been dismissed. (Doc. 40).

conspiracy under § 1983, a plaintiff must show that "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents." *See Dix v. Edeleman Financial Services*, 978 F.3d 507, 518 (7th Cir. 2020). There must be an actual deprivation of rights to establish conspiracy. *Id.* A plaintiff must show that overt acts in furtherance of the agreement actually deprived him of a constitutional right. *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018). In other words, an "underlying constitutional violation" must be established, in addition to a showing that "defendants agreed to inflict the constitutional harm." *Id.* "Because conspiracies are often carried out clandestinely and direct evidence is rarely available, plaintiffs can use circumstantial evidence to establish a conspiracy, but such evidence cannot be speculative." *Id.*

CNB contends the alleged illegal conduct in this case—the seizure of firearms and ammunition—was done in furtherance of a federal bankruptcy action and not under color of state law. DeVore testified that he and Deputy Morgan agreed to enter the locked Hatchery Building where Plaintiffs' property was removed. Sheriff Robbins acknowledged he was aware certain items not on the Replevin Order which might include James Walch's property could be taken. Chris Williams testified CNB knew that the Hatchery Building belonged to the Anna Walch Trust. Consequently, there is a factual dispute concerning whether Defendants agreed to remove firearms and ammunition that were not included on the Replevin Order. Additionally, there is a genuine issue of material fact concerning the extent of Morgan's, Robbins's, and DeVore's knowledge that the property seized belonged to someone other than Vince Walch. Even assuming this

was done pursuant to a federal bankruptcy action, which is disputed by the bankruptcy trustee, when the facts are viewed in a light most favorable to Plaintiffs, the Court finds there is a factual issue as to whether state actors and private actors took steps to remove Plaintiffs' property, and whether CNB representatives were aware of and were willful participants in that endeavor.

CNB further asserts summary judgment is warranted because adequate post-deprivation remedies were available. James Walch filed an intervening action against CNB in the Montgomery County case from which the Replevin Order arose. *See CNB Bank & Trust, N.A. v. Vincent Walch, et al.*, Montgomery County, Illinois, Case No. 17-L-5. "Where state law remedies exist, a plaintiff must either avail herself of the remedies guaranteed by state law or demonstrate that available remedies are inadequate." *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996). In *Monroe v. Pape*, 365 U.S. 167 (1961), the United States Supreme Court recognized that a state or local official may be sued under § 1983 for actions taken under "color of state law" even though the official's actions also violate state or local law and there is an available state remedy. *Id.* at 183. In *Bradley v. Village of University Park*, 929 F.3d 875 (7th Cir. 2019), the Court rejected the assertion that § 1983 is unavailable when there are adequate post-deprivation state remedies:

> Excusing top municipal officials from federal liability when they violate constitutional due process rights, so long as they also violate state laws and the state provides some post-deprivation recourse, would (1) undermine public employees' due process rights and remedies under *Loudermill* and its progeny; (2) conflict with *Monroe v. Pape*, and its progeny, which hold that a state or local official may be sued under § 1983 for actions taken "under color of state law" even though the official's actions also violate state or local law and a remedy exists under state law; and (3) conflict with *Patsy v. Board of Regents*, which held that § 1983 plaintiffs need not exhaust state-law remedies before asserting their federal

rights. There is no indication in *Parratt*, *Hudson*, *Zinermon*, or our en banc decision in *Easter House* of an intention to undermine or overrule so much bedrock § 1983 law.

*Id..* at 880 (internal citations omitted). Accordingly, the fact that there may be adequate post-deprivation remedies does not foreclose a § 1983 action.

CNB acknowledges it may have received secondhand information concerning an agreement between DeVore, the Sheriff, Prillaman, and Weinheimer to remove guns and ammunition without Plaintiffs' consent. Weinheimer testified he gave DeVore permission to execute the Replevin Order. There is at least a question of fact as to whether that could be interpreted as Weinheimer consenting to the removal of Plaintiffs' property. There is also a factual dispute concerning whether CNB officials assisted in "breaking into" the Hatchery Building as alleged by Plaintiffs. It is reasonable to presume CNB sought to benefit from the removal of the items because it had a financial interest in obtaining as many assets as it could. For all of these reasons, the Court denies CNB's Motion for Summary Judgment as to the conspiracy claims in Count III.

### C.  Trespass Claims

In Count IX, Plaintiffs seek to hold CNB liable for DeVore's alleged trespass based on a *respondeat superior* theory. CNB contends summary judgment is warranted because Plaintiffs did not have exclusive possession or any ownership of the Anna Walch Trust property, and the entry was consented to by Vince Walch. In Illinois, trespass is "an intentional invasion of the exclusive possession and physical condition of land." *Woods v. Neil Oil Co., Inc.*, 621 F. Supp.3d 918, 924-25 (C.D. Ill. 2022) (quoting *Dietz v. Illinois Bell Tel. Co.*, 154 Ill. App.3d 554, 559 (1st Dist. 1987)). "[T]o constitute an actionable trespass,

an intrusion has to be such as to subtract from the owner's use of the property." *Geller v. Brownstone Condominium Ass'n*, 82 Ill. App.3d 334, 335 (1st Dist. 1980).

James Walch co-owned the Hatchery Building with his siblings ands controlled the property by virtue of being Anna Walch's power of attorney. James operated his firearm business out of the Hatchery Building and used a locked room for his office. Plaintiffs were the only individuals who had a key to access the Hatchery Building. Thus, there is at least a factual dispute regarding whether Plaintiffs had exclusive possession of the property. While CNB further claims there is no indication the intrusion onto the Anna Walch Trust property subtracted from the use of the property, the Court finds there is a factual dispute as to that issue based on the broken window and entry into the locked office to remove inventory. Based on the foregoing, the Court denies CNB's request for entry of summary judgment as to Plaintiffs' trespass claim in Count IX.

### D. Conversion Claims

In Count IX, Plaintiffs seek to hold CNB liable for DeVore's alleged conversion of Plaintiffs' property. To prove conversion under Illinois law, a plaintiff must show that: (1) he has a right to the property at issue; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Loman v. Freeman*, 229 Ill.2d 104, 127 (2008). CNB contends Plaintiffs have not shown they had an absolute and unconditional right to the immediate possession of the firearms and ammunition. Moreover, Plaintiffs did not make a meaningful attempt to prove ownership and recover the items until almost two years

after the replevin. Finally, neither DeVore nor CNB wrongfully or without authorization assumed control, dominion, or ownership over the property. Once the firearms and ammunition were in the possession of Langham Auctioneers, they were at the disposal of bankruptcy trustee Roger Prillaman.

When the record is viewed in a light most favorable to Plaintiffs, CNB admitted that the firearms and ammunition removed from the Hatchery Building were owned by James Walch. CNB did not return the property for approximately two years. There was testimony that Lynn Eyman of CNB was involved with inventorying the property. While CNB and DeVore allege Prillaman exercised control over the firearms, Prillaman disputes that assertion. Deputy Morgan testified he was not told by Prillaman to take possession of the items and "I would have remembered someone asking me to commit a burglary." (Doc. 128 at 28). He also testified none of the guns or ammunition would have been taken if he had a copy of the Replevin Order, and the order did not allow anyone to access property not owned by Vince Walch. Based on this conflicting testimony, the Court concludes there is a question of fact as to whether CNB converted Plaintiffs' property.

### E.  CNB'S Responsibility for DeVore's Alleged Conduct

CNB also contends it is entitled to summary judgment on Plaintiffs' trespass and conversion claims because it cannot be held liable for DeVore's alleged tortious acts when there is no evidence to indicate DeVore was acting with specific direction from CNB on May 3, 2019, especially regarding the firearms and ammunition. Also, CNB alleges it did not reasonably know whether DeVore's alleged tortious conduct was unlawful because much of that arises from conversations and agreements it was not privy to. CNB had no

basis to doubt DeVore had permission to take the firearms and ammunition he was taking.

"A principal-agent relationship exists when the principal has the right to control the manner in which the agent performs his work and the agent has the ability to subject the principal to personal liability." *Amigo's Inn, Inc. v. License Appeal Com'n of City of Chic.*, 822 N.E.2d 107, 113 (1st Dist. 2004). The Illinois Supreme Court has held that "when attorneys act pursuant to independent professional judgment, they are presumptively independent contractors whose alleged misconduct may not be imputed to their clients, unless it is shown that the client directed, controlled, authorized, or ratified the alleged misconduct." *Horwitz v. Holabird & Root*, 816 N.E.2d 272, 284 (Ill. 2004). A plaintiff seeking to hold a client liable for the attorney's allegedly intentional tortious conduct "must prove facts demonstrating either that the client specifically directed, controlled, or authorized the attorney's precise method of performing the work or that the client subsequently ratified acts performed in the exercise of the attorney's independent judgment." *Id.* at 279.

There is evidence in the record that CNB's President Gary Graham was involved in removing the window to enter the Hatchery Building, which could suggest that CNB authorized the attorney's method of performing the work. While a bank representative stated that CNB did not intend to do anything wrong, a reasonable factfinder could determine that CNB ratified the methods of its agents. Accordingly, the Court concludes there is genuine issue of material fact regarding whether CNB ratified DeVore's alleged misconduct as stated in Count IX.

F. **Damages**

CNB next contends Plaintiffs cannot establish damages because there is no evidence of the condition of the personal property prior to being taken and there is insufficient expert testimony to establish the requested damages in excess of $138,841.73. CNB contends there is insufficient documentary, photographic, or testimonial evidence to establish the accuracy of the claimed damages. Additionally, Plaintiffs proffered expert witness, Robert Jones, testified he only looked at four guns and two containers of ammunition in rendering his opinions regarding the conditions of the firearms and ammunition. Because Jones would not opine about the condition of these items prior to his observation of them on August 23, 2022, CNB contends much of his testimony is based on conjecture and speculation.

As Plaintiffs allege, however, a property owner is qualified to express an opinion as to the value of property. *American Nat. Bank and Trust Co. v. City of North Chic.*, 151 Ill. App.3d 970, 973-74 (2d Dist. 1987). Walch is a valid federal firearms license holder who has been involved in the industry for decades. Additionally, Jones has bought and sold firearms for decades. Plaintiffs assert Jones's valuation is based on industry-accepted publications. At this stage, the Court concludes that any deficiencies with Plaintiffs' damages calculations go to its weight, not its admissibility.

CNB also asks the Court to strike Plaintiffs' request for punitive damages because the Illinois Supreme Court has restricted when a principal can be liable for punitive damages solely on a *respondeat superior* basis. *See Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1083-84 (7th Cir. 2019). "Illinois law insists on managerial involvement before

punitive damages may be awarded against a corporation." *Id.* Based on the alleged involvement of CNB President Gary Graham, there is a factual dispute whether a punitive damages award against CNB is permissible.

IV.     **CONCLUSION**

For all of these reasons, the Court concludes there are genuine issues of material fact which preclude the entry of summary judgment in favor of CNB as to Counts III and IX.  Accordingly, Defendant CNB Bank & Trust, N.A.'s Motion for Summary Judgment as to Counts III and IX [Doc. 118] is DENIED.

ENTER: March 28, 2024

 /s/ Colleen R. Lawless
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE