IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JAMES WALCH and JANIS WALCH, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| AARON MORGAN, Individually, in his Official Capacity, and as Agent of Montgomery County; SHERIFF RICK ROBBINS, Individually, in his Official Capacity, and as Agent of Montgomery County; MONTGOMERY COUNTY; SILVER LAKE GROUP, LTD., Individually and as Agent of CNB Bank; THOMAS DEVORE, Individually and as Agent of CNB BANK; CNB BANK & TRUST, N.A., a National Banking Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 19-cv-3191 |
| Defendants. | ) |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Plaintiffs James Walch and Janis Walch's Motion for Partial Summary Judgment [Doc. 117].

**I.      INTRODUCTION**

This is an action under 42 U.S.C. § 1983 wherein husband and wife Plaintiffs James and Janis Walch assert ten counts against three sets of Defendants: (1) attorney Thomas DeVore and his law firm Silver Lake Group; (2) CNB Bank & Trust; and (3) Montgomery County, Sheriff Rick Robbins, and former Deputy Aaron Morgan. (Doc. 1). Plaintiffs'

Complaint includes six counts under § 1983 and four state law counts. (*Id.*) Count I is a property seizure count asserted against Montgomery County, Robbins, and Morgan. (*Id.* at 9-10). Count II is an excessive force to property claim asserted against the same Montgomery County Defendants. (*Id.* at 10-12). Count III is a conspiracy to deprive civil rights claim asserted against all Defendants.[1] (*Id.* at 12-14). Count IV is a failure to intervene claim as to Montgomery County, Robbins, and Morgan. (*Id.* at 14-15). Count V is an inadequate training claim as to Montgomery County and Robbins. (*Id.* at 15-16). Count VI is an inadequate supervision and discipline claim as to Montgomery County and Robbins. (*Id.* at 16-17). Count VII is a state law trespass claim against Morgan and DeVore. (*Id.* at 17-18). Count VIII is a state law conversion claim against Morgan and DeVore. (*Id.* at 18-19). Count IX is a *respondeat superior* claim against Montgomery County, Robbins, Silver Lake Group, and CNB Bank. (*Id.* at 19-20). Count X is a state law claim for indemnification against Montgomery County. (*Id.* at 20).

II.   **FACTUAL BACKGROUND**

   A. **Existence of Agency Relationship**

Defendant CNB Bank was a party to a Montgomery County legal proceeding involving Plaintiffs' son, Vince Walch, in which a Replevin Order had been issued, allowing CNB to replevy items listed within the Replevin Order. (Doc. 117 at 2). The March 27, 2017, Order of Replevin stated, in part, "that the Sheriff of Montgomery County or such other officer to whom this is directed . . . take the specified property of

---

[1] The claim against Defendant Silver Lake Group has since been dismissed. (Doc. 40).

Defendants identified on the attached schedule (which schedule is incorporated herein by reference) that may be found in Montgomery County and deliver it to Plaintiff, CNB Bank & Trust, N.A." (Doc. 123 at 5). Four of CNB's employees were present on May 3, 2019, during the execution of the Replevin Order. (Doc. 117 at 2). CNB hired Defendant Silver Lake Group, LTD, to represent it in both the replevin and bankruptcy cases. (*Id.*) Defendant Thomas DeVore of Silver Lake Group handled both cases as CNB's attorney. (*Id.*)

CNB's corporate representative, Chris Williams, testified that on May 3, 2019, the bank was attempting to "secure whatever items they could within the bankruptcy" because CNB benefitted financially by the recovery of more assets. (Doc. 117-2 at 147-48). Williams further testified that firearms and ammunition owned by Plaintiff James Walch were seized and removed from Plaintiffs' property on May 3, 2019, and some of those items were later recovered by Plaintiffs. (*Id.* at 150-51).

Anna Walch was James Walch's mother and Vince Walch's grandmother. (Doc. 130 at 2). The Anna Walch Trust owned the real property where the Hatchery Building was located and where the seizure occurred on May 3, 2019. (Doc. 123 at 5). Plaintiffs contend James controlled the Hatchery Building property as Anna Walch's power of attorney, and only Plaintiffs had a key to unlock the Hatchery Building. (Doc. 129 at 2). Property owned by Vince Walch was located in the Hatchery Building and elsewhere on Anna Walch Trust property grounds on May 3, 2019. (Docs. 123 at 5 and 130 at 5). Specifically, Vince was storing items which included firearms, a laser for land leveling equipment, woodworking equipment, and ammunition. (Doc. 123 at 6). At the time,

Vince was in default to CNB in an amount exceeding $2 million. (Doc. 121 at 11). In order to pursue the collateral items listed on the Replevin Order, CNB obtained relief from the stay order in Vince's pending bankruptcy case. (*Id.* at 12).

Prior to May 3, 2019, Defendant Thomas DeVore helped make arrangements with Langham Auctioneers to repossess and remove items for CNB. (Doc. 117 at 2). In April 2019, DeVore, a Langham Auctioneers employee, and Lynn Eyman, a CNB employee, visited the property where the Hatchery Building was located. (Doc. 118-9 at 34-36). Eyman testified she did not go inside the Hatchery Building on that visit. (*Id.*)

At the request of CNB, DeVore was present at the Walch property on May 3, 2019, "working, helping the bank, and working for the bank with its repossession action," for which CNB paid him by the hour. (Doc. 117 at 3). Vince Walch asked Deputy Morgan what all they could take, and he said anything on the Replevin Order. (Doc. 118-5 at 22-23). Vince testified that DeVore and Morgan gave him the impression they were going to go inside whether he agreed to it or not. (*Id.* at 103-04). At some point on May 3, 2019, Vince left the Anna Walch Trust property to retrieve a key to the Hatchery Building. (Doc. 121 at 13). When Vince returned, he noticed that a lock had been cut inside of Vince's Building. (*Id.*) When Vince complained about the lock being cut, DeVore stated, "I can do whatever the fuck I want." (*Id.*)

DeVore testified that Gary Graham, the Regional President of CNB, helped him remove and subsequently break a window to gain entry into the locked Hatchery Building. (Doc. 117 at 3). Chris Williams testified that DeVore told him he had permission to access the building. (Doc. 117-2 at 92). After the window was removed, DeVore entered

the Hatchery Building, along with Lynn Eyman of CNB Bank, other employees of CNB, Deputy Morgan, and several other individuals with Langham Auctioneers, who were present while firearms and ammunition were being removed from the building. (Doc. 117 at 3). Each of the four CNB employees who were present on May 3, 2019, physically touched the firearms found within the Hatchery Building, though DeVore and other individuals with Langham Auctioneers physically removed these items from the Hatchery Building. (*Id.*) Chris Williams testified that, while he did not dispute DeVore acted as an agent of CNB on May 3, 2019, DeVore was not acting as the bank's agent when he "broke into" the locked Hatchery Building. (Doc. 117-2 at 147).

Citing Williams's testimony and Langham Auctioneers' invoice to CNB, Plaintiffs claim CNB was present at the Walch property on May 3, 2019, and "(1) had institutional knowledge that the locked Hatchery Building was not owned by the bankruptcy debtor; (2) physically assisted DeVore in removing a window, observed DeVore breaking the window and entered the locked Hatchery Building; (3) did not attempt to stop anyone from taking any items that were not on the Replevin Court Order list; (4) paid Langham Auctioneers' invoice in full, despite the labor charges for loading, unloading, and inventorying ammo and guns; [and] (5) obtained a financial benefit as a direct result of the actions taken by DeVore, Silver Lake Group, and Langham Auctioneers." (Doc. 117 at 5-6). CNB disputes receiving a financial benefit for the taking of any firearms, ammunitions, or other items involved in this lawsuit, because those items were never auctioned in connection with the bankruptcy proceeding or pursuant to the Replevin Order. (Doc. 121 at 6).

On May 3, 2019, Hal Langham, Ty Langham, and Nate Langham of Langham Auctioneers were present on the Walch property and working on behalf of CNB by repossessing items and relocating them to a safe location. (Doc. 117 at 4). Langham submitted an invoice to and received payment from CNB for labor it described as, "loading, unloading equipment, ammo, tools, and guns . . . inventorying ammo, guns, and machinery with Lynn Eyman for insurance coverage." (*Id.*) CNB claims it believed DeVore had permission to retrieve firearms and ammunition and thus had permission to direct Langham to do the same. (Doc. 121 at 9). Plaintiffs allege no testimony has been presented suggesting that Langham had discretion in the type of property seized and manner in which said property was taken, though CNB asserts DeVore's testimony suggests Langham had discretion. (Doc. 117 at 5). When the equipment subject to the Replevin Order was removed, Vince asked Deputy Morgan if he could leave the property and Morgan responded in the affirmative. (Doc. 121 at 14).

**B. Access to Hatchery Building and Repossession of Firearms/Ammunition**

Plaintiffs allege the Replevin Order that was acted upon on May 3, 2019, did not provide anyone access to locked buildings on Plaintiffs' property and did not authorize any firearms or ammunition to be repossessed. (Doc. 117 at 5). CNB along with DeVore, Silver Lake, and the Montgomery County Defendants argue the Replevin Order allowed the Sheriff to take property "that may be found in Montgomery County." (Docs. 121 at 7, 123 at 2-3). DeVore and Silver Lake further contend Plaintiffs did not own the Hatchery Building on May 3, 2019, or any other date. (Doc. 123 at 2-3). Plaintiffs note Chris Williams testified on behalf of CNB that it lacked knowledge concerning a court order that would

allow entry into the locked Hatchery Building, and it was not aware of any document expressly giving it authority to enter the Anna Walch Trust property where the Hatchery Building was located. (Doc. 117 at 5). Furthermore, neither Deputy Morgan nor Sheriff Rick Robbins had an order from the bankruptcy court allowing them to take possession of the weapons and ammunition in the Hatchery Building, and no such order was being obtained. (*Id.*) CNB claims there are no allegations it trespassed or converted property. (Doc. 121 at 10). Rather, Plaintiffs are alleging CNB should be held vicariously liable for DeVore's alleged tortious trespass and conversion. (*Id.*). DeVore and Silver Lake contend Plaintiffs' assertions concerning knowledge of a court order or authority to enter the Hatchery Building are immaterial because the March 27, 2017 Order of Replevin authorized the Montgomery County Sheriff to take certain property owned by Vince and Alexis Walch that "may be found in Montgomery County" and deliver the same to CNB. (Doc. 123 at 3-4). Additionally, CNB states the bankruptcy court entered an order allowing the bankruptcy trustee to retain possession of the firearms. (Doc. 121 at 10).

DeVore testified that he asked for and received permission from Deputy Morgan to enter the locked Hatchery Building and that if he had not been granted such permission, he would have "absolutely not" gone back into the building. (Doc. 123 at 4). DeVore agreed that "in a legal sense" the Sheriff's Office had granted permission to enter the locked building. (*Id.*). Morgan testified that if DeVore and Langham Auctioneers gained access to the Hatchery Building by cutting locks, that would not be permitted within the Order of Replevin. (Doc. 117 at 6).

During the morning of May 3, 2019, DeVore called Roger Prillaman, the trustee of the bankruptcy estate for Vince and Alexis Walch, to ask if they should take the firearms found on the Anna Walch Trust property, given that some of the firearms and ammunition belonged to James Walch. (Doc. 121 at 14). In response, Prillaman indicated he was interested in doing so but only if James Walch consented. (Doc. 121-1 at 9-11). DeVore testified he then called Mark Weinheimer, James Walch's attorney, to request permission to take the firearms and ammunition. (Doc. 118 at 76-78). CNB claims Weinheimer gave permission to take personal property found on property occupied by Vince. (Doc. 121 at 15). Weinheimer testified, "I gave him permission to follow the replevin order that allowed him to investigate and repossess matters related to Vince. . . . I'm saying it was specific to Vince's building." (Doc. 118-14 at 17). He further testified, "There was nothing said about getting into any other area in the older structure." (*Id.* at 18).

As of May 3, 2019, there was no court order stating that the bankruptcy trustee would take possession of firearms and ammunition. (Doc. 117 at 6). DeVore and Silver Lake claim these allegations are immaterial based on the language of the Replevin Order. (Doc. 123 at 4-5). CNB further asserts the bankruptcy court's order lifting the stay authorized the bankruptcy trustee to retain possession of Vince Walch's firearms. (Doc. 121 at 11).

The equipment taken subject to the Replevin Order was ultimately auctioned and the proceeds distributed. (Doc. 121 at 15). CNB alleges the firearms and ammunition were taken by and stored at Langham Auctioneers. (Doc. 121 at 16). Plaintiffs argue that while

a majority of the firearms and ammunition appear to have been stored at Langham, many cans and rounds of ammunition remain missing, along with six firearms. (Doc. 130 at 11). CNB argues the firearms and ammunition were thereafter at the disposal of Prillaman. (Doc. 121 at 16). Plaintiffs contend the bankruptcy trustee would not have had control of Plaintiffs' personal property. (Doc. 130 at 11). CNB contends Plaintiffs ultimately recovered the firearms and ammunition from Langham Auctioneers. (Doc. 121 at 16). Plaintiffs acknowledge recovering most of their firearms and some of the missing ammunition but not all of their items, and thus allege damages is an issue for the jury to decide.

## III. DISCUSSION

In seeking partial summary judgment, Plaintiffs allege there is no genuine issue of material fact that Defendants DeVore and Silver Lake were acting as agents of Defendant CNB on May 3, 2019. Additionally, Plaintiffs argue Langham Auctioneers was acting as an agent of CNB on May 3, 2019, and thereafter while in possession of Plaintiffs' property. Finally, Plaintiffs assert it is undisputed that Defendants did not have a court order allowing entry into the locked Hatchery Building or allowing repossession of any firearms or ammunition. (*Id.* at 13-16).

In response, CNB alleges it cannot be held liable for DeVore's or Silver Lake's alleged intentional misconduct. Additionally, CNB argues Langham Auctioneers was not CNB's agent, and the agency allegation is being asserted for the first time at summary judgment. CNB further asserts the Replevin Order allowed entry into the Hatchery

Building and the bankruptcy court's order allowed the bankruptcy estate to retain firearms.

Defendants DeVore and Silver Lake only responded to the third issue by arguing the March 27, 2017 Replevin Order authorized the Montgomery County Sheriff to take certain items of property owned by Vince Walch and Alexis Walch wherever they were found, as long as they were located in Montgomery County, Illinois. The Montgomery County Defendants adopt the response of DeVore and Silver Lake.

### A. Legal Standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit, and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Biggs v. Chic. Bd. of Educ.*, 82 F.4th 554, 559 (7th Cir. 2023) (internal quotation marks and citation omitted). The Court views the evidence and construes all reasonable inferences in favor of the non-movant. *Driveline Systems, LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). "The court does not assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Driveline Systems*, 936 F.3d at 579 (internal quotation marks omitted).

A party may move for summary judgment on part of any claim or defense. Fed. R. Civ. P. 56(a). Partial summary judgment is a pretrial adjudication that certain issues are deemed established for purposes of the trial. *See Kenall Manufacturing Co. v. Cooper Lighting, LLC*, 354 F. Supp.3d 877, 894-96 (N.D. Ill. 2018).

**B.  DeVore, Silver Lake, and Langham Auctioneers as Agents of CNB**

In seeking partial summary judgment on an issue relevant to their *respondeat superior* claim in Count IX and CNB's fourth affirmative defense, Plaintiffs allege CNB directed, controlled, and/or authorized DeVore's and Silver Lake's alleged misconduct thereby creating an agency relationship and ratified their alleged misconduct. Plaintiffs further assert Langham Auctioneers was acting as an agent of CNB on May 3, 2019, and thereafter while in possession of Plaintiffs personal property.

"A principal-agent relationship exists when the principal has the right to control the manner in which the agent performs his work and the agent has the ability to subject the principal to personal liability." *Amigo's Inn, Inc. v. License Appeal Com'n of City of Chic.*, 822 N.E.2d 107, 113 (1st Dist. 2004). The Illinois Supreme Court has held that "when attorneys act pursuant to independent professional judgment, they are presumptively independent contractors whose alleged misconduct may not be imputed to their clients, unless it is shown that the client directed, controlled, authorized, or ratified the alleged misconduct." *Horwitz v. Holabird & Root*, 816 N.E.2d 272, 284 (Ill. 2004). A plaintiff seeking to hold a client liable for the attorney's allegedly intentional tortious conduct "must prove facts demonstrating either that the client specifically directed, controlled, or authorized

the attorney's precise method of performing the work or that the client subsequently ratified acts performed in the exercise of the attorney's independent judgment." *Id.* at 279.

Plaintiffs claim the record establishes that CNB directed, controlled, or authorized (expressly, or through ratification) DeVore's conduct through its active participation with him in the events of the day. Specifically, CNB's Regional President, Gary Graham, assisted DeVore in removing the window to the Hatchery Building to gain entry. Lynn Eyman and other CNB employees then went inside. CNB employees picked up and touched firearms while not removing them. Eyman was cataloguing items by taking notes for purposes of the replevin.

Additionally, Plaintiffs claim CNB authorized DeVore's conduct following the events of the day by ratification. CNB conferred a substantial financial benefit because of DeVore's actions. DeVore acted on May 3, 2019, solely to benefit CNB financially. CNB's corporate representative, Chris Williams, acknowledged that the more assets it recovered for the bankruptcy, the more money it would get back.

Chris Williams testified that the bank did not instruct DeVore to remove or break the window. Moreover, based on DeVore's statements, CNB believed DeVore had permission to enter the Hatchery Building. Williams testified CNB relied on DeVore's statements. Furthermore, DeVore testified there were no CNB employees around him when he talked to bankruptcy trustee Roger Prillaman or Plaintiffs' attorney Mark Weinheimer about taking Plaintiffs' property.

Based on the foregoing, there is a factual dispute concerning whether CNB directed, controlled, authorized, or ratified DeVore's alleged misconduct. Because it is

disputed whether any CNB official was privy to conversations DeVore had about taking the guns and ammunition, a juror could find that DeVore was acting pursuant to his independent professional judgment in pursuing CNB's legal rights and that CNB did not have complete knowledge concerning the events of May 3, 2019. Furthermore, while there is a factual dispute concerning whether Plaintiffs recovered all of their firearms and ammunition from Langham Auctioneers, there is no indication that CNB benefitted financially because all of the firearms and ammunition that belonged to Plaintiffs and could be located were returned to Plaintiffs. For these reasons, the Court concludes there is a genuine issue of material fact as to whether there was a principal-agency relationship between CNB and DeVore.

Plaintiffs also ask the Court to issue a ruling that Langham Auctioneers was acting as an agent of CNB Bank regarding its actions in connection with Plaintiffs' personal property seized on May 3, 2019. Plaintiffs contend Langham acted as CNB's agent throughout its involvement in the replevin process, based on its role in the seizure, removal, and storage of Plaintiffs' personal property.

Chris Williams testified that Tom DeVore arranged for Langham Auctioneers to be present on May 3, 2019. Additionally, DeVore testified that Langham consulted him, not CNB, if there was a question concerning whether certain property should be taken. Because there is a genuine issue of material fact concerning the extent of control that CNB had over the work of Langham Auctioneers, the Court denies the motion for partial summary judgment on this issue.

### C. Court Order Allowing Entry into the Hatchery Building

Finally, Plaintiffs request entry of summary judgment finding Defendants did not have a court order allowing entry to the Hatchery Building or repossession of any firearms or ammunition. This request relates to the trespass and conversion claims against Morgan and DeVore in Counts VII and VIII. Plaintiffs contend there is no genuine issue of material fact that Defendants did not have a court order allowing entry into the locked Hatchery Building or to repossess firearms and ammunition.

In response, Defendants DeVore and Silver Lake argue that the Order of Replevin entered on March 27, 2017, allowed the Montgomery County Sheriff to take certain items of personal property owned by Vince and Alexis Walch as long as the items were found in Montgomery County. Under Illinois law, "property may be taken from the possession of a defendant under a replevin order only in the county in which the order is entered and by a proper officer of the county." 735 ILCS 5/19-116. Because the Hatchery Building is located in Montgomery County, Defendants contend the Montgomery County Sheriff was authorized to recover the items.

Illinois law further provides, "If the defendant fails to deliver up to the sheriff the chattel which is the subject of the order for replevin and the plaintiff has a reasonable belief where the chattel is sequestered, the court may authorize the sheriff to use reasonable force to enter into the property to recover same upon such terms and conditions as the court may direct." 735 ILCS 5/19-117. Section 5/19-117 indicates that, if forcible entry into a property is required to recover items in connection with a replevin proceeding, a separate order authorizing the use of force by the sheriff to enter property

is required. Thus, the sheriff cannot simply break into any private home or business to recover items that are subject to a replevin order. Defendants were not authorized to enter the Hatchery Building absent consent or a separate court order.

Defendant Deputy Morgan testified that accessing the Hatchery Building by cutting locks would not be permitted by the Replevin Order. Morgan acknowledged that CNB went into the Hatchery Building without a court order. When asked if it was possible he gave DeVore permission to enter the building, Morgan said it was not and he "would have remembered somebody asking me to commit a burglary." (Doc. 118-15 at 43). Defendant Sheriff Robbins testified that, without consent from the Walch family, what was done on May 3, 2019 was wrong. Moreover, nothing should have been taken that was not in the Replevin Order. Chris Williams testified "the bank did not have any document expressly giving the bank permission to go on the Anna Walch Trust property." (Doc. 117-2 at 54). DeVore testified no such order allowing Defendants to enter the locked Hatchery Building was on its way or being obtained.[2] Based on the foregoing, the Court finds Defendants did not have a court order authorizing them to enter into the locked Hatchery Building on May 3, 2019.

---

[2] To the extent that Defendants argue that Plaintiffs did not own the property where the Hatchery Building was located, it is undisputed that James Walch controlled the property as Anna Walch's power of attorney, and only Plaintiffs had a key to the Hatchery Building. The Court concludes this is sufficient indica of ownership.

IV. **CONCLUSION**

For the reasons stated herein, the Court denies Plaintiffs' Motion for Partial Summary Judgment under Rule 56 to the extent it seeks a determination that Defendants Thomas DeVore, Silver Lake Group, and nonparty Langham Auctioneers were acting as agents of CNB Bank. The Court grants Plaintiffs' Motion for Partial Summary Judgment to the extent it seeks a determination that Defendants did not have a court order authorizing entry into the locked Hatchery Building. Accordingly, Plaintiffs' Motion for Partial Summary Judgment [Doc. 117] is GRANTED in part and DENIED in part, as provided in this Order.

ENTER: March 30, 2024

          /s/ Colleen R. Lawless
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE