IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JAMES WALCH and JANIS WALCH,     ) | |
|     ) | |
|     **Plaintiffs,**     ) | |
|     ) | |
|     **v.**     ) | **Case No. 19-cv-3191** |
|     ) | |
| AARON MORGAN, Individually, in     ) | |
| his Official Capacity, and as Agent of     ) | |
| Montgomery County; SHERIFF RICK     ) | |
| ROBBINS, Individually, in his     ) | |
| Official Capacity, and as Agent of     ) | |
| Montgomery County;     ) | |
| MONTGOMERY COUNTY; SILVER     ) | |
| LAKE GROUP, LTD., Individually     ) | |
| and as Agent of CNB Bank; THOMAS     ) | |
| DEVORE, Individually and as Agent     ) | |
| of CNB BANK; CNB BANK &     ) | |
| TRUST, N.A., a National Banking     ) | |
| Corporation,     ) | |
|     ) | |
|     **Defendants.**     ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is the Montgomery County Defendants' Motion for Summary

Judgment [Doc. 120].

## I.    INTRODUCTION

This is an action under 42 U.S.C. § 1983 wherein Plaintiffs James and Janis Walch

assert ten counts against three sets of Defendants: (1) attorney Thomas DeVore and his

law firm Silver Lake Group; (2) CNB Bank & Trust; and (3) Montgomery County, Sheriff

Rick Robbins, and former Deputy Aaron Morgan (referred to collectively as the

"Montgomery County Defendants" or "Defendants"). (Doc. 1). Plaintiffs' Complaint includes six counts under § 1983 and four state law counts. (*Id.*) Count I is a property seizure count asserted against Montgomery County, Robbins, and Morgan. (*Id.* at 9-10). Count II is an excessive force to property claim asserted against the Montgomery County Defendants. (*Id.* at 10-12). Count III is a conspiracy to deprive civil rights claim asserted against all Defendants.[1] (*Id.* at 12-14). Count IV is a failure to intervene claim as to Montgomery County, Robbins, and Morgan. (*Id.* at 14-15). Count V is an inadequate training claim as to Montgomery County and Robbins. (*Id.* at 15-16). Count VI is a 1983 inadequate supervision and discipline claim as to Montgomery County and Robbins. (*Id.* at 16-17). Count VII is a state law trespass claim against Morgan and DeVore. (*Id.* at 17-18). Count VIII is a state law conversion claim against Morgan and DeVore. (*Id.* at 18-19). Count IX is a *respondeat superior* claim against Montgomery County, Robbins, Silver Lake Group, and CNB Bank. (*Id.* at 19-20). Count X is a state law claim for indemnification against Montgomery County. (*Id.* at 20).

The Montgomery County Defendants seek summary judgment on all claims. In their Motion for Summary Judgment, the Montgomery County Defendants adopt and incorporate the statement of facts and corresponding exhibits asserted by co-Defendants CNB Bank (Docs. 118, 118-1) and DeVore and Silver Lake Group (Docs. 119, 119-1). (Doc. 120 at 4). Accordingly, the Court hereby adopts and incorporates the factual background of its Opinions (Docs. 139, 140) ruling on those motions.

---

[1] The claim against Defendant Silver Lake Group has since been dismissed. (Doc. 40).

## II.    DISCUSSION

The Montgomery County Defendants first allege Morgan, Robbins, and the Sheriff's Office are entitled to summary judgment on any Fourth Amendment, conspiracy, or failure to intervene claims for the following reasons: 1) no state action occurred where private parties repossessed property in connection with a state court replevin order and direction from a federal bankruptcy court trustee; 2) Illinois law provides a meaningful post-deprivation remedy; 3) Morgan and Robbins did not fail to intervene or conspire with others; and 4) Morgan and Robbins are entitled to qualified immunity. (Doc. 120 at 5-10). They also assert the Sheriff's Office is entitled to summary judgment on any claims brought pursuant to *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978). (*Id.* at 10-12).

The Montgomery County Defendants next assert Morgan and the Sheriff's Office are entitled to summary judgment on any state law intentional tort claims because 1) Plaintiffs do not own the property where the alleged trespass occurred and the attorney and debtor adult son consented to entry; 2) any property seized was under the control of the federal bankruptcy trustee; and 3) Morgan is immune pursuant to the Tort Immunity Act. (*Id.* at 12-14). They also contend summary judgment is warranted as to Montgomery County on Counts I, II, III, IV, V, VI,  IX, and X. (*Id.* at 15).

### A. Legal Standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the

outcome of the suit, and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Biggs v. Chic. Bd. of Educ.*, 82 F.4th 554, 559 (7th Cir. 2023) (internal quotation marks and citation omitted). The Court views the evidence and construes all reasonable inferences in favor of the non-movant. *Driveline Systems, LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). "The court does not assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Driveline Systems*, 936 F.3d at 579 (internal quotation marks omitted).

## B. Fourth Amendment, Conspiracy, Failure to Intervene Claims

### 1. State Action

The Montgomery County Defendants seek summary judgment on the Fourth Amendment claims asserted in Counts I and II, the conspiracy claims asserted in Count III, and the failure to intervene claims asserted in Count IV. Defendants first contend summary judgment is warranted because of a lack of state action. They allege Deputy Morgan was simply present to keep the peace while CNB Bank seized collateral for its loans made to Plaintiffs' son, Vince Walch ("Vince"), at the direction of its attorney, DeVore, with the consent of Vince's bankruptcy estate trustee, Roger Prillaman. Defendants assert Deputy Morgan moved some pallets around but did not load items

onto trucks, take any property with him when he left, purchase any of the seized items at auction, or otherwise participate in the seizure of property.

There is a factual dispute regarding whether Deputy Morgan's role was merely to keep the peace. In another Order, the Court noted that DeVore testified he would not have entered the Hatchery Building without obtaining permission from Morgan. It was this re-entry that led directly to the alleged constitutional violation. Sheriff Robbins also testified he agreed to the removal of property not listed in the Order for Replevin because he believed a deal had been worked out. The Court concludes this conduct is sufficient to establish state action for summary judgment purposes.

### 2. Post-Deprivation Remedy

The Montgomery County Defendants next allege summary judgment is warranted on Plaintiffs' Fourteenth Amendment Due Process claims in Counts I, III, and IV because Illinois law provides a meaningful post-deprivation remedy. Defendants note that Plaintiffs had multiple post-deprivation remedies that were available, some of which they have used. James Walch filed an intervening action against CNB in the Montgomery County case from which the Replevin Order arose. *See CNB Bank & Trust, N.A. v. Vincent Walch, et al.*, Montgomery County, Illinois, Case No. 17-L-5. They contend Plaintiffs should not be allowed to claim-split and proceed on alleged "constitutional" violations in this case while seeking monetary relief against a replevin bond in the state court proceeding and while previously paying to settle claims in an adverse bankruptcy proceeding.

"Where state law remedies exist, a plaintiff must either avail herself of the remedies guaranteed by state law or demonstrate that available remedies are inadequate." *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996). In *Monroe v. Pape*, 365 U.S. 167 (1961), the United States Supreme Court recognized that a state or local official may be sued under § 1983 for actions taken under "color of state law" even though the official's actions also violate state or local law and there is an available state remedy. *Id.* at 183. In *Bradley v. Village of University Park*, 929 F.3d 875 (7th Cir. 2019), the Court rejected the assertion that § 1983 is unavailable when there are adequate post-deprivation state remedies:

> Excusing top municipal officials from federal liability when they violate constitutional due process rights, so long as they also violate state laws and the state provides some post-deprivation recourse, would (1) undermine public employees' due process rights and remedies under *Loudermill* and its progeny; (2) conflict with *Monroe v. Pape*, and its progeny, which hold that a state or local official may be sued under § 1983 for actions taken "under color of state law" even though the official's actions also violate state or local law and a remedy exists under state law; and (3) conflict with *Patsy v. Board of Regents*, which held that § 1983 plaintiffs need not exhaust state-law remedies before asserting their federal rights. There is no indication in *Parratt*, *Hudson*, *Zinermon*, or our en banc decision in *Easter House* of an intention to undermine or overrule so much bedrock § 1983 law.

*Id.*. at 880 (internal citations omitted). Accordingly, the fact that there may be adequate post-deprivation remedies does not foreclose a § 1983 action. The motion for summary judgment based on adequate post-deprivation remedies is denied.

### 3. Failure to Intervene and Conspiracy

The Montgomery County Defendants next contend neither Morgan nor Robbins failed to intervene or conspired with others. An officer is not liable for failure to intervene

unless he has a "realistic opportunity" to prevent the harm. *See Stewardson v. Biggs*, 43 F.4th 732, 736 (7th Cir. 2022). There must be an underlying constitutional violation before there can be a viable failure to intervene claim. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Defendants allege Morgan and Robbins were the only state actors at the scene, and Morgan's presence to simply keep the peace while private parties engaged in repossession efforts did not turn a private dispute into a constitutional violation.

When the evidence is viewed in a light most favorable to Plaintiffs, there is a question of fact as to whether Deputy Morgan had a realistic opportunity to prevent a constitutional violation. He gave permission to reenter the locked Hatchery Building. Without that permission, DeVore testified he would not have gone back into the building. There was testimony Morgan participated in phone calls discussing agreements relating to firearms and ammunition. Morgan helped carry items and loaded ammunition that was in the Hatchery Building. Sheriff Robbins admitted he knew some of James Walch's property that was not in the Replevin Order could be taken because he believed there was an agreement. The removal of that equipment is the basis of the alleged constitutional violation. As with Deputy Morgan, there is a question of fact regarding whether Sheriff Robbins had a realistic opportunity to prevent a constitutional violation.

To establish liability for conspiracy under § 1983, a plaintiff must show that "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents." *See Dix v. Edeleman Financial Services*, 978 F.3d 507, 518 (7th Cir. 2020). There must be an actual deprivation of rights to establish conspiracy.

*Id.* A plaintiff must show that overt acts in furtherance of the agreement actually deprived him of a constitutional right. *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018). In other words, an "underlying constitutional violation" must be established, in addition to a showing that "defendants agreed to inflict the constitutional harm." *Id.* "Because conspiracies are often carried out clandestinely and direct evidence is rarely available, plaintiffs can use circumstantial evidence to establish a conspiracy, but such evidence cannot be speculative." *Id.*

Defendants contend summary judgment is required on the conspiracy claims because there was no understanding between a private party and Deputy Morgan or Sheriff Robbins to deprive Plaintiffs of their constitutional rights by entering or taking items from the Hatchery Building. When the record is viewed in a light most favorable to Plaintiffs, there is a factual issue between Deputy Morgan and DeVore as to whether DeVore asked for permission to enter the locked Hatchery Building ~~whether~~ from where Plaintiffs' property was removed. DeVore testified he would not have entered if Morgan had not granted him permission. Sheriff Robbins also testified he was aware that items not owned by Vince could be taken but understood those items would be returned at a later time.

Based on the testimony of Chris Williams, CNB did not know if the Hatchery Building was owned by Vince but helped DeVore remove a window to gain entry after Deputy Morgan consented to that action. There is a factual dispute as to whether Defendants agreed to remove firearms and ammunition that were not authorized under the Replevin Order. While there is not extensive evidence that a state actor conspired

with DeVore or another private party, DeVore's testimony indicates he would not have re-entered the Hatchery Building without Morgan's permission. Vince also testified he told Morgan and Devore that, except for certain property in the very front of the Hatchery Building, the remaining property in the building belonged to his dad. To the extent that Defendants contend Roger Prillaman determined that the firearms and ammunition were going to be taken, Prillaman testified he told DeVore not to take the guns without the permission of James Walch and the only permission granted from James's attorney was to execute the Replevin Order. When the evidence is viewed in a light most favorable to Plaintiffs, the Court concludes there is enough evidence to create a factual dispute as to whether Sheriff Robbins and Deputy Morgan conspired with private individuals to violate Plaintiffs' constitutional rights. The motion for summary judgment as to Plaintiffs' conspiracy claim is denied.

### 4. Qualified Immunity

The Montgomery County Defendants contend that, even if Plaintiffs could produce facts demonstrating a civil rights violation, Deputy Morgan and Sheriff Robbins would be entitled to qualified immunity as to the claims asserted against them in their individual capacities. Defendants claim that the real property where personal property items were seized was owned by the Anna Walch Trust, not Plaintiffs. Any claims Plaintiffs may have against Defendants CNB or DeVore are not relevant to the Montgomery County Defendants. Defendants allege Morgan did not seize Plaintiffs' property or otherwise perform any acts that could be said to convert a private repossession. Rather, Morgan's role was limited to keeping the peace while Sheriff

Robbins did no more than show up to bring lunch to Morgan and "shoot the breeze with those on site." Plaintiffs contend Morgan and Robbins were more involved than the Montgomery County Defendants allege and are not entitled to qualified immunity.

Qualified immunity protects public officials from liability for money damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Van den Bosch v. Raemisch*, 658 F.3d 778, 786 (7th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To defeat a qualified immunity defense by a state official, a plaintiff must show "(1) that the official violated a statutory or constitutional right; and (2) that the right was 'clearly established' at the time of the challenged conduct." *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts are permitted to analyze the "clearly established" prong without first considering whether the alleged constitutional right was violated. *Id.* at 351.

To defeat Defendants' qualified immunity defense, Plaintiffs have the burden of demonstrating that the alleged violation of their constitutional rights was "clearly established." *Id.* "To be clearly established at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* The key inquiry involves whether the official acted reasonably based on the particular circumstances he or she faced. *Id.*

While a plaintiff need not point to an identical case that finds the alleged violation unlawful, the statutory or constitutional question must be beyond debate due to

controlling Supreme Court or Seventh Circuit precedent. *Id.* In the absence of controlling authority, "we broaden our survey to include all relevant caselaw in order to determine whether there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Doe v. Gray*, 75 F.4th 710, 717 (7th Cir. 2023). The right alleged to be violated "must be defined at the appropriate level of specificity." *Id.* "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* "In the absence of controlling or persuasive authority, plaintiffs can demonstrate clearly established law by proving that the defendant's conduct was so egregious and unreasonable that no reasonable official could have thought he was acting lawfully." *Kemp*, 877 F.3d at 351.

Citing *Cochran v. Gilliam*, 656 F.3d 300 (6th Cir. 2011), Plaintiffs state that when "police officers take an active role in a seizure or eviction, they are no longer mere passive observers and courts have held that the officers are not entitled to qualified immunity." *Id.* at 308. The court in *Cochran* noted there was photographic evidence of one of the defendants, both of whom were deputy sheriffs, carrying items out of the house and helping the landlords load plaintiff's property into a truck. *Id.* In *Cochrane*, Defendants allegedly threatened to arrest plaintiff if he interfered with the landlords' actions and sent away a state police officer that plaintiff had called for assistance. *Id.* One of the deputies was apparently aware of the "possible questionable nature" of the removal of plaintiff's belongings and called the county attorney for clarification. *Id.* Defendants even bought plaintiff's television from the landlords. *Id.* The Sixth Circuit concluded the deputies'

actions exceeded the constitutionally permissible function of keeping the peace and constituted a meaningful interference with plaintiff's property. *Id.*

Plaintiffs allege they have shown that, by unlawfully entering the locked Hatchery Building and seizing their personal property, the Montgomery County Defendants violated their rights. Sheriff Robbins testified that, absent consent, what was done was wrong. Nothing should have been taken that was not in the Replevin Order. However, Robbins was present in the Hatchery Building as firearms and ammunition were removed without any evidence of Plaintiffs' consent. In support of the assertion that Robbins was present, Plaintiffs cite DeVore's response to counsel's question regarding whether Robbins was present when firearms and ammunition were being removed, wherein DeVore stated, "I think he was, yes," and while Robbins was talking to people, DeVore could not say who he was talking to. (Doc. 118-8 at 151-52). Robbins testified he believed any weapons that were taken had been approved to be taken or would be returned. (Doc. 125-2 at 94-95).

In a previous Order, the Court determined there was a factual dispute as to whether Deputy Morgan gave DeVore permission to enter the Hatchery Building which led to the alleged constitutional violations, given that DeVore testified he would not have entered the building absent permission. (Doc. 140 at 12-13). Morgan testified he did not obstruct Langham workers from taking any guns and ammunition and in fact helped them to carry the items off. Vince Walch testified he told Deputy Morgan that the Hatchery Building contained firearms and ammunition belonging to James Walch.

The only case cited by Plaintiffs is *Cochran*, a Sixth Circuit case that is not binding on this Court. Additionally, the facts of *Cochran* are distinguishable from the factual scenario in this case. The defendants in *Cochran* played a far more active role than did the individual Montgomery County Defendants, especially Sheriff Robbins. *See Cochran*, 665 F.3d at 309. Plaintiffs make no effort to show that Robbins's particular conduct specifically defined violated a clearly established right, as required in the Seventh Circuit. *See Doe*, 75 F.4th at 717. Plaintiffs barely distinguish between the conduct of Robbins and Morgan. Plaintiffs point to testimony from Robbins that nothing should have been taken that was not in the Replevin Order and, absent consent from the Walch family, what was done was wrong. Moreover, Robbins may have been present talking to people when Plaintiffs' property was being removed. This is not at all analogous to the alleged conduct of the deputy sheriffs in *Cochran*, both of whom were active participants. Because Plaintiffs have not shown that Robbins's conduct violated a clearly established constitutional or statutory right, Robbins is entitled to qualified immunity on the individual capacity claims asserted against him.

When the evidence is viewed in a light most favorable to Plaintiffs, the Court concludes there is a factual dispute as to whether Deputy Sheriff Morgan provided permission for DeVore to remove a window from the Hatchery Building, thereby allowing him to enter the locked building when he otherwise would not have and enabling the constitutional violation to occur. Upon entry, Morgan helped DeVore and others remove property that belonged to Plaintiffs. Because Morgan's conduct, when viewed in a light most favorable to Plaintiffs, could be described as "so egregious and

unreasonable that no reasonable official could have thought he was acting lawfully," *see Kemp*, 877 F.3d at 351, the Court concludes there is a question of fact as to whether Morgan's conduct violated a clearly established constitutional or statutory right. Therefore, Morgan is not entitled to qualified immunity.

### C. *Monell* Claims

The Montgomery County Defendants next contend the Sheriff's Office is entitled to summary judgment on any *Monell* claims asserted against Sheriff Robbins in his official capacity. When suing a municipality, it is not enough to demonstrate a legitimate due process violation. *See Orozco v. Dart*, 64 F.4th 806, 823 (7th Cir. 2023). A plaintiff "must go a step further and show the municipality itself is liable for the harm he suffered." *Id.* (citing *Monell*, 436 U.S. at 690-91). While municipalities are suable entities for purposes of § 1983, a municipality may only be held liable for its own wrongs. *Id.* Therefore, municipalities are not vicariously liable for the conduct of its employees. *Id.* at 823. The government entity's policy or custom must inflict the injury in order for the entity to be liable under § 1983. *Id.* The Seventh Circuit further explained:

> We have identified three requirements to establish a *Monell* claim—policy or custom, municipal fault, and moving force causation. Starting with policy or custom, three kinds of municipal action support *Monell* liability: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. Plus, inaction can also give rise to liability if it reflects the municipality's conscious decision not to take action.

*Id.* (internal quotation marks and citations omitted).

A plaintiff proceeding under *Monell* must also show municipal fault. *Id.* "This requirement is easily established when a municipality acts, or directs an employee to act, in a way that facially violates a federal right." *Id.* (internal quotation marks and citation omitted). A plaintiff's path becomes more difficult when he alleges only "that the municipality caused an employee to violate a federal right." *Id.* "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 823 -24 (quoting *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 405 (1997)). A plaintiff must then show that the municipality itself acted with "deliberate indifference" to plaintiffs' constitutional rights. *Id.* at 824. A plaintiff must also show a direct causal link between the municipal action and the federal deprivation of rights. *Id.*

In asserting Plaintiffs have established *Monell* liability based on Sheriff Robbins's participation, Plaintiffs argue they only need to show that an official with final policymaking authority caused the injury. Plaintiffs cite testimony from Robbins wherein he was present for a phone conversation involving DeVore and others discussing an agreement to take guns and possibly other items. Robbins believed the conversation resulted in an agreement that it could be worked out later if something was taken that was not on the Replevin Order. When asked whether James, Janis, or Vince Walch was a party to those conversations, Robbins responded "Not to my knowledge." (Doc. 125-2 at 87). Plaintiffs also note Robbins saw guns and ammunition being removed. Robbins told James that his understanding was that if the weapons were his, he would be getting them

back. Robbins testified he heard DeVore saying something to the effect of there's a good possibility numerous items should be on the Replevin Order, so "let's do take it, document it, and if it isn't, the ownership isn't proven, they give it back." (Doc. 125-2 at 135). Plaintiffs contend this demonstrates Robbins's active involvement which caused the violation.

The Court disagrees with Plaintiffs' arguments regarding Robbins's involvement. Plaintiffs' allegations demonstrate Robbins believed that there was an agreement that anything taken that was not on the Replevin Order would be returned at a later time. That does not indicate Robbins committed a constitutional violation. Any suggestion that Robbins was aware there was no such agreement is speculative at best. Plaintiffs have not shown that an individual with final policymaking authority was aware of the injury, much less caused the injury. The Court will grant summary judgment to the extent Plaintiffs' *Monell* claims are premised on Sheriff Robbins as a final policymaker.

Plaintiffs also proceed under a *Monell* failure-to-train theory. The Seventh Circuit observed that the United States Supreme Court has recognized that "failure-to-train liability is appropriate only when inadequate training amounts to deliberate indifference to the rights of persons with whom the employee come into contact." *Flores v. City of South Bend,* 997 F.3d 725, 731 (7th Cir. 2021) (internal quotation marks omitted). "[B]y failing to train an employee whose conduct the municipality knows to be deliberately indifferent to the public, the municipality itself demonstrates deliberate indifference to that known risk." *Id.* Such liability can arise if a municipality follows a training program that it has reason to know fails to prevent tortious conduct by its employees, thereby showing

deliberate indifference to the known risk. *Id.* "What separates this liability from traditional *respondeat superior* liability is a known pattern of tortious conduct demonstrating the need for additional training, rather than a one-time negligence." *Id.* (internal quotation marks and citation omitted).

Plaintiffs allege Defendants admit to a failure to train, noting that when Sheriff Robbins was asked if Deputy Morgan had ever received training on replevin, Robbins responded "I have never been trained. Yes. Sorry." (Doc. 125-2 at 49). Robbins agreed that if Morgan was not provided the Order of Replevin, "he would have no idea as he sat out there what was allowed to be taken and what was not allowed to be taken." (*Id.*) He acknowledged that part of law enforcement's role at a replevin is to ensure items are not stolen. Plaintiffs contend these deviations from the norm along with Robbins's personal involvement establish a viable claim for failure to train, supervise, and discipline.

At most, Plaintiffs have shown a one-time negligent occurrence, not "a known pattern of tortious conduct demonstrating the need for additional training" as required by *Flores*. There is no indication Sheriff Robbins had any reason to believe Deputy Morgan was deliberately indifferent to the rights of the public prior to May 3, 2019. A law enforcement officer should not need training to understand that, if he wanted to determine whether an item should be taken, he should look at the replevin order. The allegations relating to training fall far short of establishing deliberate indifference to the rights of individuals with whom the officer comes into contact. Because there are no genuine issues of material fact, the Court will grant summary judgment on any *Monell*

claims asserted against the Sheriff's Office, including those asserted against Sheriff Robbins in his official capacity.

### D. State Law Intentional Torts

The Montgomery County Defendants argue they are entitled to summary judgment on any state law intentional tort claims. Plaintiffs allege Deputy Morgan is liable for the intentional tort of trespass. Moreover, the Sheriff's Office (Sheriff Robbins, in his official capacity) is liable under a principal-agent theory of *respondeat superior*.

The Montgomery County Defendants assert they are entitled to summary judgment for the following reasons: 1) Plaintiffs do not own the property where the alleged trespass occurred and consent for entry was given by their attorney and debtor son; 2) Any property seized was under the control of the federal bankruptcy trustee; and 3) Morgan is immune pursuant to the Tort Immunity Act.

#### 1. Trespass

In denying DeVore and Silver Lake's Motion for Summary Judgment as to Plaintiffs' trespass claims, the Court determined that James Walch controlled the Hatchery Building and Plaintiffs had exclusive possession of the property in question. (Doc. 140 at 13-14). For the same reason, the Montgomery County Defendants' Motion for Summary Judgment as to the trespass claim in Count VII is denied.

#### 2. Conversion

As for the conversion claims in Count VIII, the Montgomery County Defendants allege any property seized was under control of the federal bankruptcy trustee and adopt and incorporate the arguments of DeVore and Silver Lake in arguing summary judgment

is warranted. In ruling on that motion, the Court found factual disputes existed "as to whether DeVore assumed control, dominion, or ownership of the firearms and ammunition taken from the Hatchery Building on May 3, 2019." (Doc. 140 at 15). For the same reason, the Montgomery County Defendants' Motion for Summary Judgment as to Count VIII is denied.

### 3.  Immunity Pursuant to the Tort Immunity Act

The Tort Immunity Act exists "to protect local public entities and public employees from liability arising from the operation of government. It grants only immunities and defenses." 745 ILCS 10/1-101.1. Based on the Act's provisions, the Montgomery County Defendants claim Deputy Morgan has immunity for any trespass claims.

Defendants allege Deputy Morgan's entry onto the land was authorized by law, through the state court Replevin Order, and he cannot be held liable for the private repossession efforts of co-Defendant CNB Bank, or the activities of CNB's attorney, co-Defendant DeVore, regardless of whether he was acting independently or within the scope of a principal-agent relationship with creditor CNB. The Tort Immunity Act provides: "Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS 5/2-204. The Act further provides: "A public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law." 745 ILCS 5/2-209. The Montgomery County Defendants contend that, because an attorney (DeVore) and an attorney acting as

trustee for the bankruptcy estate of Vince Walch (Roger Prillaman) authorized the seizure of the remaining property, Deputy Morgan and Sheriff Robbins cannot be found liable for trespass or conversion where the alleged "injury" was caused by CNB Bank and/or DeVore.

In prior Orders, the Court determined there is a question of fact as to whether Morgan provided permission to DeVore to enter the Hatchery Building and whether, absent that permission, DeVore would have entered the building. There was also testimony that Morgan picked up firearms and ammunition and carried the items out of the Hatchery Building to be removed. There is also a factual dispute as to the nature of any agreement between DeVore, Prillaman and James Walch's attorney, Mark Weinheimer. For all of these reasons, the Court is unable to conclude Morgan is immune under the Tort Immunity Act.

### E. Montgomery County as a Party

Defendants next allege Montgomery County is entitled to summary judgment on Counts I, II, III, IV, V, VI, and IX as it is an improper party, and as to Count X if the Court grants summary judgment in favor of the County Defendants on all other claims. Plaintiffs cannot state *Monell* claims against the County because, in Illinois, a county sheriff is an "independently elected county officer and is not an employee of the county in which the sheriff serves." *Askew v. Sheriff of Cook Cnty., Ill.*, 568 F.3d 632, 636 (7th Cir. 2009). The sheriff is a constitutional office holder, and the county cannot be held vicariously liable for the sheriff's conduct. *Moy v. Cnty. of Cook*, 159 Ill.2d 519, 532 (1994). "[T]he sheriff is a policymaker for the county sheriff's office, not for the county itself."

*Franklin v. Zaruba*, 150 F.3d 682, 685 (7th Cir. 1998). A claim against a sheriff in his official capacity is really a claim against the county sheriff's office. *Id.* at 686. However, the county remains a proper defendant because state law requires it to pay a judgment entered against a sheriff's office in an official capacity. *See Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003).

In response, Plaintiffs concede that Montgomery County is a party purely for indemnity purposes and they are not pursuing *Monell* liability against Montgomery County. Plaintiffs proceed under *Monell* against Sheriff Robbins and for Robbins's actions as a policymaker. Based on the foregoing, the Court will grant summary judgment to Montgomery County as to any *Monell* or vicarious liability claims asserted against it in Counts I, II, III, IV, V, VI, and Count IX. The motion will be denied as to the indemnification claim in Count X.

## III.    CONCLUSION

For the reasons stated herein, the Court denies the Montgomery County Defendants' Motion for Summary Judgment on Counts I, II, III, and IV to the extent Deputy Morgan seeks summary judgment on the basis of a lack of state action. The Court denies the motion on Counts I, III, and IV to the extent Defendants seek summary judgment due to adequate post-deprivation remedies. The Court denies the motion as to Counts III and IV to the extent Defendants contend Deputy Morgan and Sheriff Robbins did not conspire with others.

The Court grants the motion to the extent Defendants allege Robbins is entitled to qualified immunity on the individual capacity claims and denies the motion to the extent

Defendants allege Morgan is entitled to qualified immunity on the individual capacity claims. The Court grants the motion as to any *Monell* claims asserted against the Montgomery County Sheriff's Office, including those asserted against Robbins in his official capacity. The Court denies the motion as to the trespass claims in Count VII and the conversion claims in Count VIII. The Court denies the motion to the extent Defendants allege Morgan is immune under the Tort Immunity Act. The Court grants the motion as to any *Monell* or vicarious liability claims asserted against Montgomery County in Counts I, II, III, IV, V, VI, and IX. The Court denies the motion as to the indemnification claim in Count X.

Accordingly, the Motion for Summary Judgment of Defendants Aaron Morgan, Sheriff Rick Robbins, and Montgomery County [Doc. 120] is GRANTED in part and DENIED in part, as provided in this Order.

ENTER: April 19, 2024

FOR THE COURT:              s/Colleen Lawless


COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE